UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILEEN CAIN,

                                   Plaintiff,

              -against-

MERCY COLLEGE,

                                   Defendant.

20-CV-2262 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

       Plaintiff, proceeding *pro se*, brings claims under Title VI of the Civil Rights Act of 1964

("Title VI"), 42 U.S.C. §§ 2000d to 2000d-7; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-

796; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112-12117; Title IX of the

Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681-1688; the Fourteenth

Amendment of the United States Constitution; the New York City Human Rights Law, N.Y.C.

Admin Code §§ 8-101-131; and "New York Civil Rights Law."[1] Plaintiff alleges that Defendant

discriminated against her due to her race, sex, and disability. By order dated June 23, 2020, the

Court granted Plaintiff's request to proceed *in forma pauperis*. For the reasons set forth below,

the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this

order.

## STANDARD OF REVIEW

       The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint,

that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

---

[1] Specifically, Plaintiff alleges that "New York Civil Rights Law 7740 Sec 113 of the
Violence against Women Act as it amends 47 U.S.C. 223 the Telecommunications Harassment
statute, rooted in the Communication Act of 1934[.]" (ECF No. 2, at 1.)

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

*see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must

also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P.

12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to

state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the

court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing

the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v.

Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals

of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550

U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court

must determine whether those facts make it plausible – not merely possible – that the pleader is

entitled to relief. *Id.*

## BACKGROUND

Plaintiff Ileen Cain ("Plaintiff") brings this action against Defendant Mercy College ("Defendant"), where she is an undergraduate student on their Harlem campus. (ECF No. 2, at 2.) Plaintiff alleges that Mercy College discriminated against and was biased towards her because "she is an African-American woman, with a diagnosed, disability Post Traumatic Stress Disorder (PTSD)." (*Id.* at 5.)

The following allegations are taken from the complaint: On October 4th,[2] Plaintiff met with Nick Canzanos, Assistant Dean of Student Affairs, and Rajesh Kumar, Director of Student Success, at Defendant's Dobbs Ferry campus "to discuss Plaintiff's cyberstalking / stalking allegations." (*Id.* at 3.) Plaintiff told them that students, and a staff member, Crystal Rodwell, "verbally assaulted" Plaintiff in her class, in the hallway, and to her face. (*Id.*) These verbal assaults were repeated, and they "refer[red] to Plaintiff as mock it mock her keep kooking her Kook her." (*Id.*) The assaults were also "loud and persistent and meant to disturb and distress Plaintiff." (*Id.*)

During the meeting, Plaintiff notified Canzanos and Kumar that "she receives SSD because she was diagnosed with Post Traumatic Stress Disorder (PTSD), due to the murder of her son in 2005." (*Id.*) Plaintiff wanted to work with Canzanos to "substantiate [the] allegations . . . taking place on and off [Mercy College's] Harlem site and Plaintiff would like the perpetrators, orchestrators, organizers brought to justice." (*Id.*) Canzanos stated that "cyberstalking / stalking in the past have been substantiated, on [Mercy College] campuses but it was amongst [Mercy College] students." (*Id.*) Plaintiff responded that she too was a student at Mercy College. (*Id.*)

---

[2] Plaintiff does not specify the year.

After the meeting, an unidentified individual from Mercy College called Plaintiff's classmates with questions that left them "rattled." (*Id.* at 4.) Plaintiff's classmates also informed her of the phone calls, which left her distressed. (*Id.*) For the next two months, students "openly discussed" the questions, with some stating "they were surprised [Mercy College] 'did that.'" (*Id.*)

When Plaintiff's classmates in her Introduction to Communication class discussed the phone calls, the professor "was resentful, sucked her teeth and repeated 'somebody said something' 'somebody said something.'" (*Id.* at 6.) Plaintiff expressed her distress to the professor and said she "did not want to do her oral presentation in front of the class." (*Id.*) She also informed the professor that she had spoken to Canzanos about the stalking allegations. (*Id.*) Plaintiff emailed Canzanos, "informing him fellow students shared the series of telephoned questions they received," but he never responded. (*Id.*) The Introduction to Communications professor said she understood and "did not at any time indicate to Plaintiff her final grade would suffer or that she would factor the oral presentation into her final grade" nor did she call on Plaintiff to present. (*Id.*) Plaintiff turned in "all papers relevant for her Intro to Communications class." (*Id.*) The professor later refused to let Plaintiff participate in a class activity and retake the written exam, despite granting other students the opportunity. (*Id.*) The professor did not reply to Plaintiff's emails asking to retake the exam. (*Id.*)

Plaintiff "received a final grade of D in her Intro to Communication class," which "significantly lowered Plaintiff [']s GPA." (*Id*. at 7.) Plaintiff appealed her grade, completing "all four steps of [the] appeal process." (*Id*.) The final step was to appear in front of a panel, including Dr. Reema Zeinlden, Associate Provost for Faculty Affairs and Professor of Health & Natural Sciences, who "instructed the hearing panel to disregard any of Plaintiff[']s stalking

allegations." (*Id.*) Instead, Plaintiff had "thirty minutes to tell why her D grade should be overturned." (*Id.*)

In December 2019, Plaintiff was sitting in the Mercy College library when students started "yelling at her" and "screaming mock her kook her mock it keep mocking her." (*Id.*) Students in the classroom closest to the library "erupted in raucous laughter and persisted with the same continued rant." (*Id.*) "The same afternoon, [Mercy College's] Harlem Librarian and Plaintiff filed complaints. The librarian informed Plaintiff she filed a complaint." (*Id.*)

Kristen Bowes, General Counsel at Mercy College, emailed Plaintiff and referred her to the college's counseling services. (*Id.*) Bowes stated, "We do not believe Plaintiff when Plaintiff says she is a victim of cyberstalking/stalking." (*Id.*) Canzanos and Bowes also emailed Plaintiff and asked her "to please take advantage of Mercy counseling services because the disturbance in the library clearly disturbed [her]." (*Id.*)

In January 2020, Reema Zeinlden, Associate Professor for Faculty Affairs, informed Plaintiff that Zeinlden had instructed Thomas McDonald, the Title IX Coordinator/Equity Compliance Specialist at Mercy College, to contact Plaintiff to discuss the cyberstalking/stalking allegations. (*Id.* at 4.) When McDonald contacted Plaintiff, he did not discuss Plaintiff's allegations, but "referred her to [Mercy College] counseling services and gave Plaintiff referrals to victims of cyberstalking/stalking centers." (*Id.*) He then "promptly hung up the phone, after he acknowledged he had nothing more to say to Plaintiff after he referred Plaintiff to cyberstalking/stalking centers." (*Id.*)

Plaintiff's application for Defendant's graduate program in psychology was denied. (*Id.* at 8.) Defendant had instructed all applicants to enroll in a statistics course—a requirement for the program. (*Id.*) As a result, Plaintiff "dropped college algebra and enrolled in the statistics

course." (*Id.*) She was later informed that the statistics course at Defendant's Harlem campus was "a mere math class and not equivalent to [a Mercy College] statistics class." (*Id.*) Before and after Plaintiff filed complaints of stalking, she "had several conversations with . . . Dr. Trenz Director of Behavioral Sciences, and the Grad School Psychology Program regarding her difficulties she faced on and, off [Mercy College's] Harlem site." (*Id.*) Dr. Trenz "waived Plaintiff[']s two Grad School recommendation letters, [and] directed Plaintiff to indicate her (Dr. Trenz) as a recommendation." (*Id.*) She also "read Plaintiff[']s Grad School Personal Statement and was intrigued." (*Id.*) As a result, Plaintiff "was led to believe her application would be accepted." (*Id.*)

Plaintiff also alleges that students from "[t]he College of New Rochelle were officially enrolled as [Mercy College] students" (*id.* at 9), because the two institutions "finalized a transition agreement that allowed the College of New Rochelle student's [sic] uninterrupted classes." (*Id.*) And in August 2020, Mercy College plans to "cease operation of The College of New Rochelle, Harlem and Brooklyn sites. The students at both sites are predominantly African American." (*Id.*)

Before Plaintiff filed this complaint, Mercy College did not "issue Plaintiff or speak with Plaintiff concerning her conduct as outlined herein this complaint described by [Mercy College] series of phone calls students received." (*Id.*)

## DISCUSSION

### A.    Title VI

Plaintiff alleges that Defendant Mercy College discriminated against her in violation of Title VI of the Civil Rights Act of 1964, which states, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance." 42 U.S.C. § 2000d. The Court construes the complaint as asserting two claims under Title VI, that is, a discrimination claim and a hostile environment claim.

1.    Discrimination

To state a claim under Title VI, the plaintiff must allege that (1) the defendant discriminated against the plaintiff on the basis of race, (2) the discrimination was intentional, and (3) "the discrimination was a 'substantial or motivating factor' for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 868 (2d Cir. 1998)). *See e.g. Biswas v. City of N.Y.*, 973 F. Supp. 2d 504, 531-32 (S.D.N.Y. 2013) (finding that the plaintiff-student, who alleged how she was treated differently from students of other races, had stated sufficient facts that the defendant-department had intentionally discriminated against her and that her race was a substantial or motivating factor in the defendants' actions).

Plaintiff does not allege that Defendant Mercy College ever referenced her race (Plaintiff is African American) or treated her differently from students of other races. Nothing in her complaint suggests that her race was a substantial or motivating factor for Defendant's actions.. Therefore, the Court grants Plaintiff leave to amend her complaint to state any facts suggesting that Defendant discriminated against Plaintiff in violation of Title VI.

2.    Hostile environment

Plaintiff alleges that Defendant's phone calls "created a hostile environment for Plaintiff." (ECF No. 2, at 5). To state a hostile educational environment claim, a plaintiff must plead that the defendant is "deliberately indifferent to [the] harassment, of which [the defendant] ha[s] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). *See TC v. Valley Cent. Sch. Dist.*,

777 F. Supp. 2d 577, 595 (S.D.N.Y. 2011), *recons sub nom.*, *DC v. Valley Cent. Sch. Dist.*, NO. 7:09-CV-9036, 2011 WL 3480389 (S.D.N.Y. June 29, 2011) (applying the standard to a Title VI hostile environment claim). Furthermore, allegations of discrimination that do not include references to race or any facts from which race-based discriminatory intent can be inferred, do not state a claim. *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013).

Here, Plaintiff fails to satisfy the elements of a hostile environment claim. Plaintiff's complaint does not assert that Defendant referenced Plaintiff's race, and it does not provide any facts from which race-based discrimination can be inferred. Plaintiff only alleges that Defendant's phone calls "created a hostile environment," and that they identified "Plaintiff as hostile, an outcast, and unfit for class," as well as "unstable and unfit to benefit, from [Mercy College's] services." (ECF No. 2, at 5.) Accordingly, the Court grants Plaintiff leave to amend her complaint to state any facts suggesting that Defendant created a hostile educational environment for Plaintiff in violation of Title VI.

## B.    Rehabilitation Act and the ADA

Plaintiff alleges that Defendant violated Section 504 of the Rehabilitation Act and Titles II and III of the Americans with Disabilities Act ("ADA"). While the language in the statutes is similar, there are two primary differences between the Rehabilitation Act and the ADA. First, the Rehabilitation Act only applies to federally funded programs. *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 254 (S.D.N.Y. 2014) (citing *Cardona v. Cmty. Access, Inc.*, No. 11-CV-4129, 2013 WL 304519, at *6 n.5 (E.D.N.Y. Jan. 25, 2013)). Second, while the ADA applies to denials "on the basis of" or "by reason of" a disability, 42 U.S.C. § 12132; 42 U.S.C. § 12182(a), the Rehabilitation Act is limited to denials based "*solely* by reason of [the person's] disability." *Id.* (quoting 29 U.S.C. § 794(a) (emphasis added)).

1.      Rehabilitation Act

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual

with a disability in the United States . . . shall, solely by reason of her or his disability, be

excluded from participation in, be denied the benefits of, or be subject to discrimination under

any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Program or

activity" is defined as all operations of "a college, university, or other postsecondary institution,

or a public system of higher education." 29 U.S.C. § 794(b)(2)(A). To state facts in support of a

disparate treatment claim under the Rehabilitation Act, a plaintiff must allege that she "(1) is a

'handicapped person' as defined by the Rehabilitation Act, (2) is 'otherwise qualified' to

participate in the offered activity or benefit; (3) was excluded from such participation solely by

reason of her handicap; and (4) was denied participation in a program that receives federal

funds." *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019) (quoting *Loeffler v. Staten

Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)).

Assuming that Plaintiff's PTSD qualifies her as a "handicapped person within the

meaning of the Rehabilitation Act," and Defendant receives federal funds, Plaintiff still fails to

allege facts suggesting that Defendant excluded her from the program solely on account of her

disability. The Court therefore grants Plaintiff leave to amend her complaint to state any facts

specifying from which benefit or activity she was excluded and the basis for that exclusion.[3]

Plaintiff also alleges that Defendant "created a hostile environment that would prevent,

delay, or deny Plaintiff the full benefit of [Mercy College's] services." (ECF No. 2, at 2.) District

---

[3] Plaintiff seeks compensatory damages (ECF No. 2, at 11), but monetary damages may
only be awarded for a violation of the Rehabilitation Act when there is intentional
discrimination. *Biondo*, 935 F.3d at 73. Intentional discrimination can be demonstrated when an
"official . . . acted with at least deliberate indifference to the strong likelihood that a violation of
federally protected rights will result." *Id.* (quoting *Loeffler*, 582 F.3d at 275-76).

courts within the Second Circuit have recognized hostile educational environment claims under the Rehabilitation Act.[4] *See e.g. Pell v. Trustees of Columbia Univ. in City of N.Y.*, No. 97 Civ. 0193, 1998 WL 19989, at *17 (S.D.N.Y. Jan. 21, 1998) (finding that "hostile educational environment claims are cognizable under § 504 [of the Rehabilitation Act]" and they should be analyzed according to Title VII hostile work environment standards). *But see Hamilton v. City Coll. of City Univ. of N.Y.*, 173 F. Supp. 2d 181, 185 n.1 (S.D.N.Y. 2001) (noting that hostile learning environment claims have not been recognized by the Second Circuit). To state a claim for a hostile learning environment, a plaintiff must allege that: "(1) the [school] was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [the learning environment], and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the [school]." *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (Title VII hostile work environment claim).

Here, Plaintiff has not alleged sufficient facts to suggest that Mercy College was "permeated with discriminatory intimidation." Plaintiff only alleges that Defendant's "telephone questions . . . identified Plaintiff as an outcast, hostile and threatening" (ECF No. 2, at 2.), distressed her, and affected her ability to participate and to perform in her Introduction to Communications class (*id.* at 6), causing her to receive a final grade of D in the class. (*Id.* at 7.)

Moreover, it is unclear if Plaintiff's allegations – that the "Title IX Coordinator/Equity Compliance Specialist" refused to discuss Plaintiff's stalking allegations and instead promptly

---

[4] Although Plaintiff alleges that students harassed her (*id.* at 3), in district court cases where plaintiffs have sued for a hostile educational environment based on peer-to-peer harassment under Section 504 of the Rehabilitation Act, the only defendants have been school districts and school officials. *See Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235 (W.D.N.Y. 2012); *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343 (S.D.N.Y. 2005).

hung up the phone when they spoke (*id.* at 4), and that Defendant General Counsel Kristen

Bowes "stated 'we do not believe Plaintiff when Plaintiff says that she is a victim of

cyberstalking/stalking'" (*id.* at 7) – are related to Plaintiff's hostile educational environment

claim. Thus, the Court grants Plaintiff leave to amend her complaint to state any facts suggesting

that Defendant created a hostile educational environment for Plaintiff in violation of the

Rehabilitation Act.

    2.       Title II

    Plaintiff alleges that Defendant discriminated against her in violation of Title II of the

ADA. Under Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

U.S.C. § 12132. The ADA defines "public entity" as "(A) any State or local government; (B) any

department, agency, special purpose district, or other instrumentality of a State or States or local

government; and (C) the National Railroad Passenger Corporation, and any commuter authority."

42 U.S.C. § 12131(1)(A)-(C). Private universities "are not public entities subject to Title II."

*Wiltz v. N. Y. Univ.*, No. 1:19-CV-03406, at *7 (S.D.N.Y. Dec. 23, 2019), *report and

recommendation adopted by* 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) .

    Here, Defendant Mercy College is a private educational institution and thus not subject to

Title II of the ADA. Therefore, the Court dismisses Plaintiff's Title II claims for failure to state a

claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

    3.       Title III

    Title III of the ADA requires that "[n]o individual shall be discriminated against on the

basis of disability in the full and equal enjoyment of goods, services . . .  or accommodations of

any place of public accommodation by any person who owns . . . or operates a place of public

accommodation." 42 U.S.C. § 12182(a). To state a claim under Title III of the ADA, a plaintiff

must allege, "(1) [that] he or she is disabled within the meaning of the ADA; (2) that the

defendant[] own[s], lease[s], or operate[s] a place of public accommodation;[5] and (3) that the

defendant[] discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal*

*Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009). Plaintiff

must also allege that the "exclusion or discrimination was due to [the plaintiff's] disability."

*Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-

35 (2d Cir. 2003)).

Title III of the ADA describes discrimination in both general and specific terms. Two

provisions are relevant to this case. The first states that discrimination includes,

> subject[ing] an individual . . . on the basis of a disability . . . of such
> individual . . . directly, or through contractual, licensing, or other arrangements, to
> a denial of the opportunity of the individual . . . to participate in or benefit from
> the goods, services, facilities, privileges, advantages, or accommodations of an
> entity.

42 U.S.C. § 12182 (b)(1)(A)(i). The second provision provides that discrimination can entail

> a failure to make reasonable modifications in policies, practices, or procedures,
> when such modifications are necessary to afford such goods, services, facilities,
> privileges, advantages, or accommodations to individuals with disabilities, unless
> the entity can demonstrate that making such modifications would fundamentally
> alter the nature of such goods, services, facilities, privileges, advantages, or
> accommodations.

42 U.S.C. § 12182 (b)(2)(A)(ii). Where the challenged conduct concerns school-related decisions

"courts . . . refrain from second-guessing the disciplinary decisions made by school

administrators." *Davis*, 526 U.S. at 648.

---

[5] Private universities are considered a place of public accommodation. 42 U.S.C.
§ 12181(7)(J).

Here, even assuming that Plaintiff is disabled within the meaning of the ADA, she does not allege that, because of her disability, (1) her communications professor denied her an opportunity to retake an exam and participate in activities, (2) the Associate Provost disregarded Plaintiff's cyberstalking allegations, or (3) the administration did not substantiate her allegations. Put simply, Plaintiff fails to connect her disability with Defendant's conduct. Thus, the Court grants Plaintiff leave to amend her complaint to allege any facts supporting her claim that Defendant violated Title III of the ADA.

**C.   Title IX**

1.   Discrimination

Plaintiff alleges that Mercy College "was deliberately indifferent [and] was bias and discriminated against Plaintiff [because] Plaintiff is an African American woman" and therefore violated Title IX. (ECF No. 2, at 2.)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Specifically, Title IX prohibits educational institutions from "[s]ubject[ing] any person to separate or different rules of behavior, sanctions, or other treatment [on the basis of sex]." 45 C.F.R. § 86.31(b)(4). To state a claim, a plaintiff must allege that members of the opposite sex were treated differently in similar circumstances and that the discrimination or bias is on account of sex. *See Doe v. Columbia Univ.*, 831 F.3d 46, 57-59 (2d Cir. 2016).

To state a claim against an educational institution, the plaintiff must allege "that a school official with 'authority to address the alleged discrimination and to institute corrective measures' had 'actual knowledge' of the discrimination and failed to adequately respond." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (citing *Gesber v. Lago*

*Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). A school's response is inadequate "if it provides no response or if it provides a response that 'amount[s] to deliberate indifference to discrimination.'" *Id.*

Assuming Defendant receives federal financial assistance, the complaint does not state any facts suggesting that male students in similar circumstances were treated more favorably or that Defendant's conduct was due to Plaintiff's sex. Therefore, the Court grants Plaintiff leave to amend her complaint to allege any facts suggesting that Mercy College discriminated against her in violation of Title IX.

2.      Hostile environment

Plaintiff alleges that Defendant's phone calls to other students "created a hostile environment for Plaintiff." (ECF No. 2, at 5.) To state a claim for a hostile educational environment under Title IX, a plaintiff must allege that she "subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of h[er] educational environment." *Papelino*, 633 F.3d at 89 (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).

"Single incidents, unless very serious, generally do not satisfy the necessary requirement of severity or pervasiveness." *Manessis v. N.Y. Dept. of Transp.*, No. 02-CV-0359, 2003 WL 289969, at *6 (S.D.N.Y. Feb. 10, 2003). *But see Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace.").

Plaintiff asserts that she perceived her environment to be hostile (ECF No. 2, at 5.), referencing phone calls received by fellow students. But Plaintiff does not state facts suggesting that this alleged incident created a hostile environment that was so serious that it altered her

educational environment. Thus, the Court grants Plaintiff leave to amend her complaint to state

facts in support of this claim.

**D.** **Due Process Rights**

Plaintiff alleges that Defendant deprived her of her Due Process rights under the

Fourteenth Amendment of the United States Constitution. But the Fourteenth Amendment

applies only to state action and "not to acts of private persons or entities." *Rendell-Baker v.*

*Kohn*, 457 U.S. 830, 837-38 (1982) (citing *Civil Rights Cases*, 109 U.S. 3, 11 (1883)); *see Xiaolu*

*Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015) (stating that "since [defendant]

Vassar [College] [wa]s a private college, and not a state actor, 'the federal Constitution does not

establish the level of due process that [Vassar] had to give [the plaintiff-student].'").

While there is state action when a private entity carries out a function "traditionally

exclusively reserved to the state," *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974),

"education is not considered to be exclusively the prerogative of the State," *Hamlin ex rel.*

*Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp. 2d 379, 386 (S.D.N.Y. 2005).

Mercy College is a private institution. Although it provides members of the public with

an education, this function does not make it a state actor, and the Fourteenth Amendment does

not apply. The Court therefore dismisses Plaintiff's claim that Defendant deprived her of her due

process rights. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**E.** **Admissions**

Plaintiff alleges that she discussed her graduate school application and the graduate

psychology program with Dr. Trenz, the Director of Behavioral Sciences. He was "intrigued" by

Plaintiff's personal statement and "waived the Grad school recommendation letters," which "led

[Plaintiff] to believe that her application would be accepted." (ECF No. 2, at 8.) But her

application was denied. (*Id.*) In addition, Plaintiff references students from the College of New

Rochelle who officially enrolled at Mercy College, the closure of the College of New Rochelle, and the demographics of its student body. (*Id.*) ("The students [at the College of New Rochelle's Harlem and Brooklyn sites] are predominantly African American.").

These allegations do not suggest discrimination or any cause of action. Indeed, it is unclear if Plaintiff's application denial and the integration of College of New Rochelle students with Mercy College are even related. Therefore, the Court grants Plaintiff leave to amend her complaint to state sufficient facts.

## F.   Supplemental Jurisdiction

Under 28 U.S.C. § 1367 (a), if a district court has subject matter jurisdiction over a federal claim, then it has supplemental jurisdiction over any state-law claims if they are so related that they form part of the same case. However, under § 1367(c)(2), a district court has the discretion to decline to exercise supplemental jurisdiction over a claim under § 1367(a) if the claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). State claims can substantially predominate over federal claims "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought[.]" *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). For example, in *Hooks v. Auto Field Corp.*, No. 15-CV-4231, 2015 WL 8042241, *1-2 (E.D.N.Y. Dec. 3, 2015), the court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2), stating that the federal claim was "straightforward" and could be resolved "in a matter of weeks on cross-motions for summary judgment with limited, if any, discovery," whereas the eight state law claims "w[ould] require months of discovery and likely a trial." *Id.* at *2.

**G.     Motion for Pro Bono Counsel**

The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Because it is too early in the proceedings for the Court to assess the merits of the action, Plaintiff's motion for counsel is denied without prejudice to renewal at a later date.

## LEAVE TO AMEND

Plaintiff is granted leave to amend her complaint to detail her claims. Plaintiff's amended complaint should separate her different claims into the sections as titled above: "Title VI Claim," "ADA and Rehabilitation Act Claims," "Admissions Claim," and "Title IX Claims." In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a)  give the names and titles of all relevant persons;

b)  describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c)  give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d)  give the location where each relevant event occurred;

e)  describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated her federally protected rights; what facts show that her federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

**CONCLUSION**

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

Plaintiff is granted leave to file an amended complaint to assert facts in support of her "Title VI," "ADA and Rehabilitation Act," "Title IX," and "Admissions" claims. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-2662 (LLS). An Amended Complaint Form is attached to this order. No summons will be issued at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court denies Plaintiff's application for the appointment of counsel (ECF No. 3) without prejudice to renewal at a later date.

In light of the current global health crisis, parties proceeding *pro se* are encouraged to submit all filings by email to Temporary_Pro_Se_Filing@nysd.uscourts.gov. *Pro se* parties also

are encouraged to consent to receive all court documents electronically. A consent to electronic service form is available on the Court's website. *Pro se* parties who are unable to use email may submit documents by regular mail or in person at the drop box located at the U.S. Courthouses in Manhattan (500 Pearl Street) and White Plains (300 Quarropas Street). For more information, including instructions on this new email service for *pro se* parties, please visit the Court's website at nysd.uscourts.gov.

SO ORDERED.

Dated:    July 20, 2020
         New York, New York

_____
              Louis L. Stanton
              U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____
(Include case number if one has been assigned)

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____, is a citizen of the State of

         (Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                    (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

_____

First Name                    Middle Initial        Last Name

_____

Street Address

_____

County, City                          State                  Zip Code

_____          _____

Telephone Number                    Email Address (if available)

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                    State                    Zip Code

Defendant 2:

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                    State                    Zip Code

Defendant 3:

First Name                              Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                                    State                    Zip Code

Defendant 4:

_____
First Name                          Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                        State                Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |

| First Name | Middle Initial | Last Name |

| Street Address |

| County, City | State | Zip Code |

| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.