UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ILEEN CAIN,

                Plaintiff,

-against-

MERCY COLLEGE, *et al.*,

                Defendants.

20-CV-2262 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

      By order dated July 20, 2020, the Court granted Plaintiff leave to file an amended complaint. Plaintiff filed an amended complaint, and the Court has reviewed it. For the reasons set forth below, the Court dismisses the action.

## STANDARD OF REVIEW

      The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

      While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff initiated this action against Mercy College, alleging that the College discriminated against her based on her race, disability, and gender, in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), and Title IX of the Education Amendments of 1972 ("Title IX"). In the Court's order granting Plaintiff leave to amend, the Court ordered Plaintiff to provide enough facts to support her claims. But in the amended complaint, Plaintiff does not state facts suggesting that Defendants treated her differently because of her race, disability, or gender. In fact, she realleges that same set of facts that she had alleged in her original complaint. The Court assumes familiarity with those allegations and provides a summary of some of the facts alleged in the amended complaint.

On October 4, 2019, Plaintiff met with Defendant Assistant Dean of Student Affairs Canzanos and Dean of Student Success Rajh Kumar at Defendant's Dobbs Ferry campus "to discuss Plaintiffs, formal complaint detailing she is a victim of on campus cyberstalking/stalking sexual harassment victimization taking place on [the] Harlem Campus." (ECF 10, at 3-4.) At the meeting, Plaintiff informed Canzanos and Kumar that she was diagnosed with PTSD and "disclosed that she was terminated from other institutions of higher learning after filing formal complaints about cyberstalking/stalking sexual harassment and school official's alleged students and staff commented negatively on her conduct and character to uphold their termination." (*Id.* at 7.)

> Plaintiff also disclosed at that meeting that
>
> she has been a victim of cyberstalking/stalking sexual harassment for seventeen years, it started when she was thirty three years old, as a new tenant in a new community . . . [when] the cyberstalking/stalking victimization sexual harassment, progressed after she refused to comply with the sexual exploits of her female neighbors. They began cyberstalking/stalking her lying on her character, tracking her gathering followers via the internet, to track, and troll her gather information on her disclose her whereabouts leading to Plaintiffs, employment, and school.

(*Id.*) "Hence, the screaming repeated rant, on Defendants Harlem campus. In Plaintiff face, as she sit in class, walked in the hallway, the repeated screaming rant gang mock her, kook her, kook her keep mocking her, gang her, kook her kook her kook her kook kook." (*Id.*)

> Plaintiff also alleges that after the meeting,
>
> Defendants devised a series of phone calls and questions[1] to Plaintiffs fellow classmates and students attending classes at Defendants, Harlem campus to substantiate Plaintiff was a threat to herself, and her fellow classmates. . . . Due to

---

[1] These questions included: "Does Plaintiff exhibit threatening behavior? Is Plaintiff an outcast? Are you afraid to attend classes, because Plaintiff is hostile? Does Plaintiff appear unstable? Has Plaintiff threatened the professor or any classmate? Has Plaintiff shoved desks around or thrown papers around the classroom? Blurted obscenities while Professor Claudette Charles Barr conducted the Intro to Communications class." (*Id.* at 5.)

3

> the series of phone calls and questions, Plaintiff was in constant fear for her wellbeing while she attended classes. The investigative series of phone calls created a chain reaction of events that resulted in Plaintiff, not receiving equal opportunity to benefit from Defendants program and activities, [l] Deficient grades, [2] Plaintiff was embarrassed, humiliated in front of students and her fellow classmates. [3] The phone calls and questions incited students. Students used the phone calls and questions to further torment Plaintiff [4] Plaintiff began leaving class early.

(*Id.* at 4.) Moreover, "students from [another class] openly discussed Defendants trying to coerce students to talk bad about Plaintiff." (*Id.*) Plaintiff contends that Defendants' "investigative series of phone calls were inappropriate, and discriminatory." (*Id.* at 6.)

Plaintiff's claims also concern her receiving a D in one her classes and her appeal of that grade. She claims that "[t]he D grade was given in retaliation for Plaintiff's complaints of students and staff participating in the on campus cyberstalking/stalking victimization and for Plaintiffs fellow classmates informing Plaintiff of the phone calls and questions." (*Id.* at 9.) Plaintiff appealed the grade, and Defendant Dr. Zeineldin formed a hearing committee, which determined that the grade was justified.

After Plaintiff appealed her grade, Zeineldin referred her to Defendant McDonald, the Title IX Coordinator, who, Plaintiff alleges

> emailed her stating he is the person at Mercy College who can meet with Plaintiff to review her concerns, discuss options and share resources. On January 10th, 2020 Mr. McDonald phoned Plaintiff, and offered Plaintiff information for victims of cyberstalking/ stalking centers. Plaintiff asked is that all? Mr. McDonald blatantly replied 'yes.' Mr. McDonald mere offer of information for cyberstalking/stalking centers, was bias, dismissive, and deliberately indifferent.

(*Id.* at 13.) Plaintiff alleges that McDonald was "grossly negligent," and that Plaintiff was entitled to "[a]n investigation a grievance process, hearing, and all other equitable proceedings under the Title IX statute and The 'Cleary Act.'" (*Id.* at 14.)

On December 9, 2019, Defendant Kristen Bowes, General Counsel at Mercy College, emailed Plaintiff and referred her to the college's counseling services. (*Id.* at 15.) Bowes stated

4

that "'although we do not believe Plaintiff when Plaintiff says she is a victim of cyberstalking/stalking, we encourage Plaintiff to use Defendants counseling services.'" (*Id.*) In referencing an incident in a Mercy College library where "students[ ] began running back and forth in front of the library door screaming mock it, kook her, keep kooking her, stalk her, stalk her, mock it, kook her" (*id.*), Bowes encouraged Plaintiff to take advantage of counseling "'[b]ecause the disturbance in the library clearly disturbed Plaintiff.'" (*Id.*)

## DISCUSSION

### A.   Title VI Claim

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Here, Plaintiff does not allege any facts suggesting that any defendant discriminated against her because of her race, color, or national origin. The Court therefore dismisses Plaintiff's Title VI claim for failure to state a claim.

### B.   ADA and Rehabilitation Act Claims

Plaintiff also fails to state a claim under the ADA or the Rehabilitation Act because she does not allege any facts suggesting that Defendants discriminated against her because of a disability. Under Title III of the ADA, a plaintiff must allege that she was discriminated against or excluded from programs because of a disability. *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Here, even assuming that Plaintiff is disabled within the meaning of the ADA, she does not allege that Defendants' conduct was at all motivated by any such disability. Rather, her allegations suggest that she and Defendants disagreed about her coursework. But these allegations do not suggest that Defendants treated her differently because she was disabled.

As for Plaintiff's claims under the Rehabilitation Act, she fails to allege any facts suggesting that Defendants excluded her from participation in her education at Mercy College solely by reason of her disability, *see Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019), or that because of her disability, she was subject to unwelcome harassment that created an "abusive educational environment . . . permeated with discriminatory intimidation, ridicule, and insult." *Lawton v. Success Academy Charter Schs., Inc.*, 323 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (internal quotation marks and citation omitted).

For these reasons, the Court dismisses Plaintiff's claims brought under the ADA and the Rehabilitation Act for failure to state a claim.

**C.     Title IX Claims**

Plaintiff also alleges that Defendants violated Title IX, which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a claim under Title IX, a plaintiff must allege that members of the opposite sex were treated differently in similar circumstances and that the discrimination or bias is on account of sex. *See Doe v. Columbia Univ.*, 831 F.3d 46, 57-59 (2d Cir. 2016).

Plaintiff does not allege any facts suggesting that male students in similar circumstances were treated more favorably or that Defendants treated her differently because she is a woman. The Court therefore dismisses Plaintiff's Title IX claims for failure to state a claim.

**D.     Further Leave to Amend Denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514

6

F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

### E.     Decline to Exercise Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

      The Clerk of Court is directed to terminate any motions in this action.

SO ORDERED.

Dated:  February 25, 2021
         New York, New York

*Louis L. Stanton*
Louis L. Stanton
U.S.D.J.